UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AKANIYENE WILLIAM ETUK,<br><br>                Plaintiff,<br><br>               -v.-<br><br>THE CITY OF NEW YORK[1]; JACOBI MEDICAL CENTER; BRONXWORKS; DHS OFFICER HARVEY; MISS GENESIS; FORMER NYPD OFFICER NICHOLAS KONNER; FORMER NYPD OFFICER PATRICK SAYEGH; FORMER NYPD OFFICER ANDREW WITKOWSKI; NYPD OFFICER JUNIOR MUNOZ; NYPD OFFICER ARAMIS RAMOS; NYPD OFFICER RYAN NEFF; NYPD OFFICER RICHARD SANTIAGO; NYPD OFFICER STEVEN WAN; NYPD OFFICER SERGIO NUNEZ-LOPEZ; and NYPD JOHN DOE OFFICERS 1-10,<br><br>               Defendants. | 24 Civ. 4957 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

On July 6, 2023, Plaintiff Akaniyene William Etuk and his service animal were removed from their residence at a Bronx homeless shelter, and Plaintiff was transported to Jacobi Hospital for a psychiatric evaluation. He now brings claims under federal and state law against officers of the New York City Police Department (the "NYPD") and the Department of Homeless Services ("DHS") whom he alleges were involved in the incident; the NYPD itself; the operator of the homeless shelter and one of its staff members; and Jacobi Medical Center.

---

[1] Plaintiff originally named the New York City Police Department (the "NYPD") in his complaints. However, in his response to a pre-motion letter to dismiss his complaint, Plaintiff acknowledged that the NYPD was a non-suable entity under New York City Charter § 396, and he requested instead that his claims be construed as being brought against the City of New York. (Dkt. #41). The Clerk of Court is directed to amend the caption accordingly.

Current and former NYPD Officers Nicholas Konner, Patrick Sayegh, Andrew Witkowski, Junior Munoz, Steven Wan, Aramis Ramos, Richard Santiago, and Ryan Neff (collectively, the "NYPD Defendants"), DHS Officer Harvey, and the City of New York (all together, the "City Defendants") have moved to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  BronxWorks and its employee, Genesis Pena (collectively, the "BronxWorks Defendants," and together with the City Defendants, the "Moving Defendants"), have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons set forth in the remainder of this Opinion, the Court grants the Moving Defendants' motions, although it will grant Plaintiff leave to replead certain of his claims.[2]

## BACKGROUND[3]

### A.    Factual Background

Plaintiff's factual allegations in the TAC are, to put it mildly, sparse.  (*See generally* TAC).  According to Plaintiff, on the evening of July 6, 2023, DHS

---

[2]    The docket reflects that Plaintiff has not effected service on Defendant Jacobi Hospital within the 90 days specified under Federal Rule of Civil Procedure 4(m), nor has he sought to extend the time to effect that service.  Accordingly, the Court dismisses the claims against Jacobi Hospital without prejudice.

[3]    This Opinion draws its facts from Plaintiff's Third Amended Complaint (the "TAC" (Dkt. #28), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The TAC incorporates by reference three exhibits to Plaintiff's initial complaint (Dkt. #1); the Court focuses on the third of those exhibits, an excerpt of Plaintiff's discharge papers from a visit to Jacobi Hospital on July 6, 2023 (the "Jacobi Report" (*id.* at 14)).  In addition, the Court has considered factual statements made in Plaintiff's prior complaints; in documents titled "Plaintiff's Response to Defendant's Answer to Third Amended Complaint" ("Pl. Answer Response" (Dkt. #32)), and "Plaintiff's Response to Defendants' Pre-Motion Letter to Dismiss the Third Amended Complaint" ("Pl. PML Response" (Dkt. #41)); and in his opposition submissions.  For ease of reference, the City Defendants' memorandum of law in support of their motion to dismiss the TAC is referred to as "City Def. Br." (Dkt. #45); Plaintiff's opposition to the City Defendants' motion to dismiss is referred to as "Pl.

Officer Harvey, a DHS officer posted to a men's shelter maintained by BronxWorks at 3600 Jerome Avenue in the Bronx, and Genesis Pena, a BronxWorks employee, summoned "a team of NYPD officers" to the shelter. (*Id.* at 3). Once they arrived, the officers "forcibly removed" Plaintiff and his service animal from the residence, using excessive physical force in the process. (*Id.*). The NYPD Officers, along with Officer Harvey and Ms. Pena, transported Plaintiff and his service animal "to an undisclosed location," and then to Jacobi Hospital, where Plaintiff was "injected with an unknown substance without his consent." (*Id.* at 3-4). Plaintiff also references a separate event in which BronxWorks personnel broke into Plaintiff's locker and took personal items, including a laptop, that Plaintiff claims were "only partially returned." (*Id.* at 4).[4]

Additional information — some of which is contested by Plaintiff — is found in the Jacobi Report that Plaintiff incorporated as an exhibit to the TAC.

---

City Opp." (Dkt. #47); the City Defendants' reply memorandum of law in further support of their motion is referred to as "City Def. Reply" (Dkt. #53); the BronxWorks Defendants' memorandum of law in support of their motion for judgment on the pleadings is referred to as "BW Def. Br." (Dkt. #51); and Plaintiff's opposition to the BronxWorks Defendants' motion is referred to as "Pl. BW Opp." (Dkt. #48).

[4]    Plaintiff's claims of involuntary detention, restriction of movement, and injection with unknown substances are claims that he repeats in several other civil actions that were filed in this District on the same day as this action. *See, e.g.*, *Etuk* v. *City of New York*, No. 24 Civ. 4953 (JPC) (SLC) (S.D.N.Y. filed June 24, 2024) (alleging that on May 25, 2024, NYPD officers removed Plaintiff from his Bronx residence and took him to a hospital, where he was forcibly medicated); *Etuk* v. *City of New York*, No. 24 Civ. 4962 (GHW) (SDA) (S.D.N.Y. filed June 24, 2024) (alleging that on August 20, 2023, on a subway platform, NYPD officers arrested Plaintiff and used excessive force against him); *Etuk* v. *Dep't of Homeless Svcs.*, No. 24 Civ. 4967 (RA) (KHP) (S.D.N.Y. filed June 24, 2024) (alleging that on March 30, 2023, officers falsely arrested Plaintiff, used excessive force, and took him to a different location without his permission); *Etuk* v. *City of New York*, No. 24 Civ. 4989 (JHR) (VF) (S.D.N.Y. filed June 24, 2024) (alleging that on March 9, 2023, Plaintiff was falsely arrested, subjected to excessive force, and forcibly medicated).

(*See* Jacobi Report).[5]  According to the Jacobi Report, Plaintiff has a prior medical history that includes both delusional disorder and psychosis; he was brought by the NYPD to the Emergency Department at Jacobi Hospital after complaints from other shelter residents that Plaintiff was acting aggressively toward them, including by telling his service animal to attack them.  (*Id.*).  For his part, Plaintiff advised hospital personnel that he had not been aggressive, and that the NYPD was "out to get him" for no reason.  (*Id.*).  Hospital staff examined Plaintiff and concluded, among other things, that Plaintiff: (i) was "pleasant[,] calm[,] cooperative[,] with no suicidal or homicidal ideations[,] no visual or auditory hallucinations[,] and a very concrete thought process"; (ii) was "not intoxicated and ha[d] no indications for forced psychiatric evaluation"; (iii) did "seem to have a baseline paranoia about police"; (iv) "ha[d] no edema or point tenderness to suggest fractures"; (v) had "[n]o head trauma" and "[n]o focal neurological deficits"; and (vi) was discharged from Jacobi Hospital "in stable condition."  (*Id.*).

## B.   Procedural History

Plaintiff filed his initial complaint on June 24, 2024, alleging claims for violation of Plaintiff's right to travel; violation of Plaintiff's right to privacy; excessive force; false imprisonment; violation of the Americans with Disabilities

---

[5]   As part of their motion papers, the BronxWorks Defendants submitted an affirmation from Genesis Pena that provided information about both the BronxWorks shelter at which Plaintiff resided and the events of July 6, 2023, in which Ms. Pena and Plaintiff were involved.  (Dkt. #50-3).  However, as explained later in this Opinion, the Court cannot consider Ms. Pena's affidavit in connection with the BronxWorks Defendants' motion for judgment on the pleadings.

Act (the "ADA"); violation of the Health Insurance Portability and Accountability Act ("HIPAA"); and "due process violations." (Dkt. #1). On July 12, 2024, the Court granted Plaintiff leave to file *in forma pauperis*. (Dkt. #6). Plaintiff then filed amended complaints on August 16, 2024 (Dkt. #7) (maintaining the same seven claims), January 15, 2025 (Dkt. #23) (maintaining the same seven claims, but adding information about certain NYPD Defendants), and January 30, 2025 (Dkt. #28).

The TAC remains the operative complaint in this case. While Plaintiff claims in the TAC to have nine claims (*see* TAC 4 (referring to "Counts I through IX")), he is less than clear in identifying the claims. The Court's review discloses the following claims:

i. A claim against the Moving Defendants for "remov[ing Plaintiff] from his residence ... without legal justification," in violation of his Fourth and Fourteenth Amendment rights;

ii. A claim against the NYPD Defendants for "forc[ing]" Plaintiff to identify himself, in violation of his right to privacy;

iii. A claim against the City Defendants and Ms. Pena for "ma[king] legal determinations without possessing a license to practice law";

iv. A claim against the NYPD Defendants for "failing to verify themselves as registered law enforcement officers";

v. A claim against the NYPD Defendants for "approach[ing] Plaintiff with guns drawn, subjecting him to threat, duress, and coercion, forcing him to leave his residence, in violation of New York Penal Law § 135.60";

vi. A claim against the NYPD Defendants for excessive force;

vii.    A claim against the Moving Defendants for transporting Plaintiff "to an undisclosed location without contractual agreement or permission, constituting unlawful detention";

viii.    A claim against the NYPD Defendants for animal cruelty to Plaintiff's service animal, in violation of New York Agriculture & Markets Law § 353;

ix.    A claim against Jacobi Hospital for injecting Plaintiff "with an unknown substance without his consent, violating HIPAA laws and his bodily autonomy rights";

x.    A claim stemming from a previous incident in which BronxWorks staff "broke into Plaintiff's locker and took personal items, including a laptop," in violation of Plaintiff's First and Fourteenth Amendment rights;

xi.    An unspecified claim under the ADA, which claim Plaintiff described in later submissions to the Court as a failure to accommodate his disabilities, including interference with his use of a service animal, as well as transportation of Plaintiff and his service animal in a "harmful discriminatory manner — without medical assessment or disability-related consideration"; and

xii.    State-law claims for assault, battery, false arrest, unlawful detention, and animal cruelty.

(TAC 1-4; Pl. PML Opp.; Pl. City Opp.; Pl. BW Opp.).[6]

The BronxWorks Defendants filed an answer to the TAC on February 12, 2025. (Dkt. #31). The City Defendants filed a pre-motion letter on March 28, 2025, indicating their intention to move to dismiss the TAC. (Dkt. #38). In an

---

[6]    Defendants surmise that Plaintiff may also wish to maintain a claim alleged in his Second Amended Complaint concerning the NYPD Defendants' failure to produce evidence that they "signed an oath to 'We the People.'" (City Def. Br. 15-16 (citing Dkt. #23 at ¶¶ 22-24)). The Court does not understand Plaintiff to be raising such a claim in the TAC. To the extent he is, under the analysis set forth in the Discussion section of this Opinion, the Court finds that such a claim is inadequately pleaded under Federal Rules of Civil Procedure 8 and 12(b)(6) and cannot be repleaded to state a predicate Section 1983 violation.

Order dated April 9, 2025, the Court dispensed with its customary practice of holding a pre-motion conference and scheduled motion practice for the City Defendants' motion. (Dkt. #40). Thereafter, on April 25, 2025, the BronxWorks Defendants expressed an interest in moving to dismiss the TAC. (Dkt. #42). Again, the Court dispensed with the pre-motion conference requirement and scheduled briefing on the BronxWorks Defendants' motion. (Dkt. #43).

Pursuant the Court's schedules, the City Defendants filed their motion to dismiss papers on April 28, 2025. (Dkt. #44-46).[7] Plaintiff opposed the City Defendants' motion in a submission filed on May 7, 2025 (Dkt. #47); at the same time, Plaintiff filed his opposition to the BronxWorks Defendants' as-yet-unfiled motion for judgment on the pleadings (Dkt. #48). The City Defendants filed their reply papers on June 11, 2025. (Dkt. #53). The BronxWorks Defendants filed their papers in support of a motion for judgment on the pleadings on May 22, 2025. (Dkt. #49-52). Plaintiff did not file a second opposition to the BronxWorks Defendants' motion.

---

[7]    After briefing had concluded, Defendants Junior Munoz, Steven Wan, Aramis Ramos, Richard Santiago, and Ryan Neff sought and obtained leave of Court to join the City Defendants' motion. (*See* Dkt. #56-57, 62-63). In addition, the docket reflects service and other issues as to Defendant Sergio Nunez-Lopez occasioned by his military deployment. Defense counsel is requested to provide an update concerning Officer Nunez-Lopez's representation status.

7

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions to Dismiss and Motions for Judgment on the Pleadings in *Pro Se* Cases

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating the viability of a plaintiff's claim, the Court must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."  *Lively* v. *WARFA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch* v. *City of New York*, 952 F.3d 67, 76 (2d Cir. 2020)); *accord Matzell* v. *Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (collecting cases).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'"  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."  *Sealed Plaintiff* v. *Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin* v. *KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)).  "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief."  *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks omitted) (alterations added) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999)).  "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended."  *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2

9

(S.D.N.Y. Jan. 20, 2015) (internal quotation marks omitted) (quoting *Stinson* v.

*Sheriff's Dep't*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980)).  A *pro se* plaintiff's

factual allegations still must at least "be enough to raise a right to relief above

the speculative level."  *Twombly*, 550 U.S. at 555.

On a motion to dismiss, the Court may consider any written instrument

attached to the complaint as an exhibit, any statements or documents

incorporated by reference in the complaint, documents that are "integral" to the

complaint even if they are not incorporated by reference, and matters of which

judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d

147, 152-53 (2d Cir. 2002); *see generally United States ex rel. Foreman* v.

*AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (discussing materials that may

properly be considered in resolving a motion brought under Fed. R. Civ.

P. 12(b)(6)); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (same).

Similarly, "[o]n a [Rule] 12(c) motion, the court considers the complaint, the

answer, any written documents attached to them, and any matter of which the

court can take judicial notice for the factual background of the case."  *L-7

Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal

quotation marks and citation omitted) (quoting *Roberts* v. *Babkiewicz*, 582 F.3d

418, 419 (2d Cir. 2009)).  "In evaluating the legal sufficiency of a *pro se*

plaintiff's claims, a court may [also] rely on the plaintiff's opposition papers" to

the extent they are consistent with the operative pleading.  *Vlad-Berindan* v.

*MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y.

10

Dec. 10, 2014) (collecting cites); *see generally Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).[8]

### 2.   Adequate Pleading Under Rule 8

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)); *see also Wynder* v. *McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (noting that Rule 8 imposes a "lenient standard" for pleading).  A complaint "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Erickson* v. *Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Problems can arise when a plaintiff alleges conduct by a group of defendants while failing to differentiate among the group.  The Second Circuit has affirmed the dismissal of a complaint that alleged "a host of constitutional and state law claims ... by 'the defendants,' and failed to identify any factual basis for the legal claims made."  *Atuahene* v. *City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order).  In particular, the Court found that the complaint impermissibly "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct."  *Id.*  That said, the Second Circuit and district courts within the Circuit have recognized that, in other circumstances, "Rule 8 does not necessarily require ... that the

---

8        As relevant here, the Court is not permitted, under this precedent, to consider Ms. Pena's affidavit in resolving the parties' motions, which affidavit is neither incorporated in nor integral to the TAC.  *See generally Ong* v. *Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 223 (S.D.N.Y. 2018) (discussing materials that may be considered incorporated by reference in or integral to a complaint).

complaint separate out claims against individual defendants." *Wynder*, 360 F.3d at 80.  For example, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Manchanda* v. *Navient Student Loans*, No. 19 Civ. 5121 (WHP), 2020 WL 5802238, at *2 (S.D.N.Y. Sept. 29, 2020) (quoting *Vantone Grp. Ltd. Liab. Co.* v. *Yangpu NGT Indus. Co.*, No. 13 Civ. 7639 (LTS), 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015)); *Feldman* v. *Comp Trading, LLC*, No. 19 Civ. 4452 (RPK) (RLM), 2021 WL 930222, at *3 (E.D.N.Y. Mar. 11, 2021).  The question is ultimately whether the complaint gives each party "notice of the substance of the claims against him." *OneWest Bank N.A.* v. *Lehman Bros. Holding Inc.*, No. 14 Civ. 8916 (JMF), 2015 WL 1808947, at *3 (S.D.N.Y. Apr. 20, 2015).

### 3.    Pleading Claims Under 42 U.S.C. § 1983

Section 1983 provides a cause of action against any

> person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]

42 U.S.C. § 1983.  The statute "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 816 (1985).  There are two essential elements to any claim raised under Section 1983: "[i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of [his] federal statutory rights, or [his] constitutional

rights or privileges." *Annis* v. *Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) (alteration added).

Furthermore, to "establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation." *Grullon* v. *City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). To do so, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti* v. *Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary." *Id.* (internal quotation marks and alteration omitted) (quoting *Iqbal*, 556 U.S. at 676).

## B.    Analysis

### 1.    An Overview of Plaintiff's Pleading Deficiencies

The brevity of Plaintiff's factual allegations — even as supplemented by his other submissions to the Court — imperils the TAC under both Rule 8 and Rule 12(b)(6), particularly with respect to the NYPD Defendants. While Plaintiff begins his factual allegations by attributing specific conduct to DHS Officer Harvey and Ms. Pena (*see* TAC 3), he quickly pivots to group allegations concerning "NYPD officers," with no further differentiation of tasks. More troublingly, Plaintiff lumps together disparate groups of NYPD officers (*e.g.*,

officers from the 52nd Precinct and the Emergency Services Squad of the 50th Precinct) without attributing conduct to any specific officer.[9]

As just noted, Rule 8 requires that Plaintiff apprise each Defendant of the substance of the claims against that Defendant. Separately, to satisfy Rule 12(b)(6), "[a] § 1983 plaintiff must also allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation." *McDaniel* v. *New York*, No. 19 Civ. 7680 (CM), 2019 WL 4242060, at *2 (S.D.N.Y. Sept. 6, 2019) (collecting cases). A plaintiff cannot merely name defendants in the caption of the complaint without discussing their specific conduct in the body of the complaint. *See, e.g., Casino* v. *Rohl*, No. 14 Civ. 2175 (SJF) (GRB), 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing claim for failing to plead personal involvement where "defendant is nowhere mentioned or referenced in the body of the amended complaint"). To the contrary, the plaintiff must "explain[] the nature of [the defendants'] involvement in violating his rights." *Sisk* v. *MCC*, No. 20 Civ. 10293 (LLS), 2021 WL 412487, at *3 (S.D.N.Y. Feb. 3, 2021). In other words, the complaint must say "what [that specific defendant] did to the plaintiff." *Griffin* v. *Kings Cnty. Dist. Attorney's Off.*, No. 20 Civ. 2387 (AMD) (LB), 2020 WL 5211049, at *4 (E.D.N.Y. Aug. 31, 2020).

---

[9]     To be sure, Plaintiff specifies that NYPD Defendants Witkowski, Nunez-Lopez, Munoz, Ramos, Neff, Santiago, and Wan "forced Plaintiff to identify himself." (TAC 3). However, as discussed later in this Opinion, that conduct fails to state a claim under Section 1983.

14

Plaintiff's allegations in the TAC are too imprecise to advise each Defendant of what he or she did wrong, and thus the Court will dismiss the TAC in its totality pursuant to Rule 8 for failure to give notice to Defendants, and pursuant to Rule 12(b)(6) for failure to plead each Defendant's personal involvement in the claimed violations.  This imprecision persists despite the fact that Plaintiff has amended his pleading three times, and despite Plaintiff's considerable experience in filing civil rights actions in this Court.  *See supra* n.4; *see also Tracy* v. *Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("In addition, the appropriate degree of special solicitude is not identical with regard to all *pro se* litigants. … [A]s noted above, the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." (alterations added)).  However, in light of Plaintiff's *pro se* status, and the liberality with which the Court must construe his claims, the Court has considered the degree to which Plaintiff should be permitted to amend his pleadings a fourth time under Federal Rule of Civil Procedure 15.  It has concluded that he should — in part.  Specifically, and pursuant to the restrictions outlined in this Opinion, the Court will allow Plaintiff to replead certain of his Section 1983 claims as to certain of the NYPD Defendants.

In making its determination regarding repleading, the Court has considered Plaintiff's factual allegations thus far across all of his submissions; the information Plaintiff possessed at the time of each submission; and the ultimate legal viability of the claims he wishes to bring.  A key reason for the

Court's decision to allow Plaintiff to replead his claims against the NYPD Defendants is that Plaintiff was unaware of the officers' identities when his complaint was initially filed; indeed, certain of the NYPD Defendants did not join the City Defendants' motion until after briefing was concluded. With the information he has obtained from the New York City Law Department in response to the Court's *Valentin* Order (*see* Dkt. #21, 25 (responses to *Valentin* Order), Plaintiff will be given one last chance to specify the conduct he attributes to each of the NYPD Defendants. *See, e.g.*, *Jean* v. *Human Resources Admin.*, No. 24 Civ. 5401 (LLS), 2025 WL 2051019, at *3 (S.D.N.Y. July 21, 2025) (allowing plaintiff to replead to allege facts "about when and where the events giving rise to his claims took place, and what the officer did or failed to do that violated [p]laintiff's rights"); *Cora* v. *Child. & Youth/Sam Inc.*, No. 24 Civ. 6235 (LTS), 2025 WL 104628, at *3 (S.D.N.Y. Jan. 13, 2025) (allowing plaintiff to replead to "describe the alleged assault, including the date of the assault, who assaulted him, and the conduct of the security guards before, during, and after the assault"). Even then, however, the Court has determined that certain of Plaintiff's claims cannot be adequately pleaded, and as to those it will deny Plaintiff leave to replead. *See Kim* v. *New Jersey*, No. 25 Civ. 8315 (KPF), 2025 WL 3013080, at *4 (S.D.N.Y. Oct. 28, 2025) ("District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile." (citing *Hill* v. *Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin* v. *Cuomo*,

16

861 F.2d 40, 42 (2d Cir. 1988))), *reconsideration denied*, No. 25 Civ. 8315 (KPF), 2025 WL 3560379 (S.D.N.Y. Dec. 11, 2025).

The Court will *not* grant Plaintiff leave to amend his pleadings a fourth time as to DHS Officer Harvey or Genesis Pena.  Plaintiff has been fully aware of these individuals' identities and their conduct since July 6, 2023, and despite several opportunities, has attributed conduct to them that fails to state a claim under the law.  With particular respect to the BronxWorks Defendants, the Court also believes that repleading of the claims against them would be futile, because those defendants do not qualify as state actors, as discussed later in this Opinion.

### 2. The Court Dismisses Certain of Plaintiff's Claims Because of Deficiencies That Cannot Be Cured by Repleading

Several of Plaintiff's claims are not, and cannot be, pleaded adequately, and will therefore be dismissed without leave to replead.  For example, the Court will not consider Plaintiff's attempt to shoehorn into the TAC allegations of a previous interaction with BronxWorks staff in which his laptop was seized, inasmuch as (i) there is no indication that the incident was in any way connected to the events of July 6, 2023, and (ii) the one BronxWorks staffer whom Plaintiff identified, "Jessica," is nowhere named in the TAC.

Similarly deficient under Rules 8 and 12(b)(6) is Plaintiff's claim under Title II of the ADA, which provides generally that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.

17

§ 12132. "[F]or a plaintiff to establish a *prima facie* violation under" Title II, "[he] must demonstrate [i] that [he] is a qualified individual with a disability; [ii] that the defendants are subject to [Title II]; and [iii] that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *Powell* v. *Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (alterations added) (internal citations and quotation marks omitted) (quoting *Henrietta D.* v. *Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). Plaintiff fails on the first and third prongs: He conclusorily asserts that he is a "qualified individual with a disability" (Pl. PML Opp. 3), but offers nothing in the way of specifics. Even if Plaintiff were able to plead a qualifying disability, however, Plaintiff remains unable to allege that any of the conduct to which he was subjected occurred *because of* his disability. (*See* City Def. Br. 7 ("Plaintiff does not allege that he was falsely arrested or confined due to a misperceived disability, nor does he identify any failure by the officers to provide reasonable accommodations during his arrest or subsequent investigation"); *see also id.* at 6 (collecting and distinguishing cases where the ADA has been applied to police conduct)). His alternate theories of ADA liability — *e.g.*, for transportation in a "harmful, discriminatory manner" (Pl. PML Opp. 3) — do not hold water.

Other of Plaintiff's putative violations cannot suffice to state a claim under Section 1983, even with a more specific repleading by Plaintiff of Defendants' conduct. In other words, for these claims, any issues with factual specificity are dwarfed by fundamental legal deficiencies. To begin, Plaintiff

18

has identified no constitutional violation in the NYPD Defendants' questioning of Plaintiff regarding his identity.  *See I.N.S.* v. *Delgado*, 466 U.S. 210, 216 (1984) ("Although we have yet to rule directly on whether mere questioning of an individual by a police official, without more, can amount to a seizure under the Fourth Amendment, our recent decision in [*Florida* v. *Royer*, 460 U.S. 491 (1983),] plainly implies that interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."); *United States* v. *Adegbite*, 846 F.2d 834, 838-39 (2d Cir. 1988) (finding that the "solicitation of information concerning a person's identity and background does not amount to custodial interrogation prohibited by [*Miranda* v. *Arizona*, 384 U.S. 436 (1966)]"); *United States* v. *Tavares*, No. 01 Cr. 1115 (JFK), 2002 WL 31571662, at *6 (S.D.N.Y. Nov. 8, 2002) (noting that questions as to a defendant's age, name, address and identification fell within pedigree exception to *Miranda* where the "questioning was of a limited nature, designed to establish [the defendant's] true age and identity"); *cf. Hiibel* v. *Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 179 (2004) ("Answering a request to disclose a name is likely to be so insignificant as to be incriminating only in unusual circumstances.").

Conversely, Plaintiff has identified no constitutional issue in the NYPD Defendants' "fail[ure] to verify themselves as registered law enforcement officers."  (TAC 3).  *See Sanchez* v. *City of New York*, No. 96 Civ. 7254 (SHS), 2000 WL 987288, at *5 (S.D.N.Y. July 17, 2000) ("Plaintiff cites no cases supporting his view that the U.S. Constitution demands an officer to identify

himself to the satisfaction of a seized citizen.  Having identified themselves to plaintiff and having learned that he was armed, the police officers were constitutionally permitted to attend to their immediate goal of ensuring their safety.").  There is nothing to suggest, for example, that Plaintiff was unaware that the team of officers who arrived at his residence on July 6, 2023, was, in fact, a team of NYPD officers.  *Cf. McKinley* v. *Crevatas*, No. 20 Civ. 3606 (KPF), 2023 WL 4364182, at *9 (S.D.N.Y. July 6, 2023) (collecting cases in which an individual's ignorance of law enforcement officer's status could impact the viability of a charge for resisting arrest).  Relatedly, while the Court will consider the conduct of the NYPD Defendants — in particular, Plaintiff's allegations that officers approached him "with guns drawn" (TAC 3) — in assessing Plaintiff's excessive force claim, it rejects Plaintiff's effort to recast this claim as a violation by the NYPD Defendants of New York Penal Law § 135.60.

Plaintiff's allegation that certain of the Defendants "made legal determinations without possessing a license to practice law" (TAC 3) also cannot suffice to constitute a Section 1983 predicate in this factual setting.  Indeed, taken to its logical conclusion, Plaintiff's argument would foreclose law enforcement officers from making determinations that are essential to their jobs — including, for example, determinations of probable cause to arrest.  To be sure, if a law enforcement officer makes an incorrect or improper determination regarding probable cause, a Section 1983 claim may lie, *e.g.,* a claim for false arrest.  However, the Court is unaware of cases recognizing a

20

standalone Section 1983 violation for "ma[king] legal determinations" as a law enforcement officer.

Finally, Plaintiff has pleaded several claims pertaining to his service animal, including claims that (i) Plaintiff and his service animal were removed from their residence without justification; (ii) Plaintiff and his service animal were subjected to excessive force; (iii) Plaintiff and his service animal were transported to an undisclosed location; and (iv) Plaintiff's service animal was "shot with an unknown substance," in violation of New York Agriculture and Markets Law § 353. (TAC 3-4). The Court will not allow Plaintiff to replead these claims.

The Second Circuit has recognized that "the unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment. *Carroll* v. *Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (collecting cases where animal died as a result of encounter with law enforcement). A district court in the Western District of New York, looking at cases outside of this Circuit, found that "the nonfatal wounding of a dog can be an unconstitutional seizure because it constitutes a meaningful interference with an owner's possessory interest in the dog," but only if the wounding was unreasonable in light of the totality of circumstances, which included "breed of the dog involved, the location of the dog at the time of the shooting — whether it was in a home or running free in public — the availability of non-lethal options to control the dog, and whether the dog posed

21

a danger to the officer or the public." *Cox* v. *City of Rochester*, No. 22 Civ. 6207 (FPG), 2025 WL 50340, at *4 (W.D.N.Y. Jan. 8, 2025).

The TAC is noticeably short on details regarding any Defendant's actions towards Plaintiff's service animal. But Plaintiff has also incorporated by reference the animal's vaccination papers as an exhibit to the TAC, and those papers indicate that repleading of these claims would be futile. (Dkt. #1 at 11-13). Those papers indicate that the animal was brought to the Animal Care Centers of NYC on July 6, 2023. While at the Animal Care Centers, Plaintiff's service animal received several vaccines, a dewormer treatment, a microchip to aid in locating the animal, a medical exam, and a New York City dog license. (*Id.* at 11).[10] Nothing in those records indicates any wounds to or trauma visited upon the animal, and this Court will not therefore find a standalone Fourth Amendment violation concerning Plaintiff's service animal.[11]

### 3. The Court Will Allow Plaintiff's Remaining Section 1983 Claims for False Arrest and Excessive Force to Go Forward as to the NYPD Defendants

The Section 1983 claims that remain concern (i) Plaintiff's July 6, 2023 removal from the Bronx homeless shelter at which he was then residing and his subsequent transportation, first to an undisclosed location and then to Jacobi Hospital, all of which the Court construes as a false arrest claim; and

---

[10]   Plaintiff does not allege in the TAC that the NYPD Defendants separated him from his service animal.

[11]   Similarly, Plaintiff has failed to state a claim under New York Agriculture and Markets Law § 353-A, which defines "Aggravated Cruelty to Animals" as intentionally killing or causing serious physical injury to a companion animal (dogs, cats, household pets) without justifiable purpose. N.Y. Agric. & Mkts. Law § 353-A. (TAC 3-4).

(ii) the NYPD Defendants' alleged use of excessive force in connection with that removal.[12]  While Plaintiff may have parsed his claims somewhat differently (*e.g.*, construing his removal as a Fourteenth Amendment procedural due process claim or a violation of his right to travel, and subdividing his excessive force claim), the Court construes them in this manner in order to raise the strongest claims that Plaintiff's factual allegations can support.

Even drawing facts from Plaintiff's other submissions, these claims as currently pleaded in the TAC violate both Rule 8 and Rule 12(b)(6) because of the absence of details regarding the Moving Defendants' conduct.  In making the determination as to whether to allow Plaintiff to replead these claims, the Court has considered the Moving Defendants' arguments for dismissal, because they bear on the issue of futility.  *See Kim*, 2025 WL 3013080, at *4. In relevant part, the City Defendants argue that the law authorized the City Defendants to engage in the conduct alleged in making an arrest, and, more specifically, that New York Mental Hygiene Law § 9.39 permits the lawful detention of individuals in certain circumstances.  (City Def. Br. 4-5, 8-16). The BronxWorks Defendants adopt many of the City Defendants' arguments, but also maintain that they are not state actors against whom a Section 1983 claim can be brought.  (BW Def. Br. 4-14).  As explained in the remainder of this section, the Court agrees that Plaintiff cannot allege state action as to the

---

[12]    Plaintiff does not allege the BronxWorks Defendants' involvement in his excessive force claims.  (*See* TAC 3 ("NYPD officers used physical force....")).

23

BronxWorks Defendants, but that he might be able to allege viable claims for false arrest and excessive force against the NYPD Defendants.

### a.    Plaintiff Has Not Alleged That the BronxWorks Defendants Are State Actors

A plaintiff cannot bring a Section 1983 claim against a private party without pleading facts showing that their challenged actions are attributable to the state. *See, e.g., West* v. *Atkins*, 487 U.S. 42, 48-49 (1988) (holding that a Section 1983 plaintiff must allege that a "state actor" violated a right secured by the U.S. Constitution or federal statute); *see also Fabrikant* v. *French*, 691 F.3d 193, 207 (2d Cir. 2012) (detailing the test for analyzing whether a private party's challenged actions are "fairly attributable" to the state). To determine whether a private entity acted under color of state law, courts must "identify[ ] the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Fabrikant*, 691 F.3d at 207 (quoting *Am. Mfrs. Mut. Ins. Co.* v. *Sullivan*, 526 U.S. 40, 50 (1999)) (internal quotations omitted). Generally speaking, a private entity's actions can be considered state action in three situations: (i) the private entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (ii) the private entity willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (iii) the state has delegated a public function to the private entity (the "public function" test). *See id.* (quoting *Sybalski* v. *Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

Pursuant to Federal Rule of Evidence 201, the Court can take judicial notice of the facts that BronxWorks is a social services agency, and that the Jerome Avenue facility at which Plaintiff resided on July 6, 2023, is a homeless shelter for men.  https://bronxworks.org/our-services/adult-and-family-homeless-services/adult-shelter-services/.  Courts in this Circuit have held that "[t]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors."  *Williams* v. *B.R.C. of New York*, No. 25 Civ. 663 (HG), 2025 WL 446237, at *2 (E.D.N.Y. Feb. 10, 2025) (internal quotation marks and citation omitted) (Bowery Residents' Committee not state actor); *see also Flores* v. *Dep't of Homeless Servs.*, No. 24 Civ. 6673 (LLS), 2025 WL 2662514, at *3 (S.D.N.Y. Sept. 16, 2025) (Neighborhood Association of Inter-Cultural Affairs ("NAICA"), provider of transitional housing, not state actor); *Smith* v. *Westhab Traverse House*, No. 24 Civ. 4961 (LTS), 2025 WL 26067, at *3 (S.D.N.Y. Jan. 2, 2025) (Westhab shelter and employees not state actors); *Levine* v. *Project Renewal*, No. 24 Civ. 616 (LTS), 2024 WL 773722, at *5 (S.D.N.Y. Feb. 26, 2024) (Project Renewal not a state actor); *Syville* v. *City of New York*, No. 22 Civ. 8009 (LTS), 2023 WL 8258020, at *6 (S.D.N.Y Nov. 29, 2023) (Help USA and employee not state actors); *Hill* v. *N.Y.C. Shelter Sys.*, No. 22 Civ. 7350 (LTS), 2023 WL 2143641, at *2 (S.D.N.Y. Feb. 17, 2023) (Volunteers of America employees not state actors).

Plaintiff claims that the BronxWorks Defendants are state actors because: (i) they worked with the NYPD to forcibly remove Plaintiff from the

25

shelter; (ii) BronxWorks staff searched Plaintiff's locker and confiscated his laptop; and (iii) BronxWorks operates under public contracts to provide shelter and services. (Pl. BW Opp. 2). Working in reverse order, the Court rejects Plaintiff's third argument as negated by the cases cited in the preceding paragraph. It rejects his second argument as factually and legally irrelevant, in that the locker search incident involved a different time frame and different BronxWorks staff. Finally, the Court rejects Plaintiff's arguments for liability under a "joint action" or "close nexus" test. Plaintiff asserts in his opposition that "BronxWorks acted under color of state law by coordinating with government actors … to remove Plaintiff from the BronxWorks shelter." (*Id.*). His factual allegations, however, fails to bear this out.

Plaintiff alleges that BronxWorks called the NYPD to the shelter on July 6, 2023 (TAC 3), but the specific conduct that amounted to false arrest was not undertaken by BronxWorks. In particular, Plaintiff alleges that, upon the arrival at the shelter, "NYPD officers approached Plaintiff with guns drawn … forcing him to leave his residence"; they "used physical force" against him; and transported Plaintiff first to an "undisclosed location" and then to Jacobi Hospital. Later on in his pleading, Plaintiff asserts that the BronxWorks Defendants and DHS Officer Harvey were involved in his transportation to Jacobi Hospital. In addition to Plaintiff's impermissible group pleading, these allegations lack plausibility and are belied by the Jacobi Report, which notes only NYPD involvement. Given Plaintiff's inability to plead state action on these

26

facts, the Court will not allow him to replead these claims as to the

BronxWorks Defendants.

### b. Plaintiff Could State a Claim for False Arrest Against Certain of the NYPD Defendants

The Court next turns to the specifics of Plaintiff's false arrest claims,

which, the Court believes, could adequately state a claim against certain of the

NYPD Defendants with proper repleading.  The Fourth Amendment to the U.S.

Constitution protects individuals within the United States from false arrest.

*Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A federal false arrest claim

is "substantially the same as a claim for false arrest under New York law."  *Id.*

To establish a claim of false arrest under either federal or state law, the

plaintiff must prove that: "[i] the defendant intended to confine [plaintiff],

[ii] the plaintiff was conscious of the confinement, [iii] the plaintiff did not

consent to the confinement, and [iv] the confinement was not otherwise

privileged."  *Ackerson* v. *City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)

(internal quotation marks and citation omitted).

An arrest is "privileged" if it is based on probable cause, for probable

cause is a complete defense to a false arrest claim.  *See, e.g., Figueroa* v.

*Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to

arrest … will defeat a claim of false arrest under the Fourth Amendment.");

*Jaegly* v. *Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("Under New York law, the

existence of probable cause is an absolute defense to a false arrest claim.")

Significantly, however, the Second Circuit has distinguished the different

27

probable causes analyses for arrests made for law enforcement purposes and

those made because of a mental health issue:

> A false arrest claim may be based on an arrest for law enforcement purposes (such as criminal trespass) or an arrest for an emergency psychiatric evaluation. *See Myers* v. *Patterson*, 819 F.3d 625, 632 (2d Cir. 2016). The constitutional protections against an unreasonable arrest "adhere[ ] whether the seizure is for purposes of law enforcement or due to an individual's mental illness." *Id.* But a different probable cause analysis applies to each type of arrest.
>
> For a law enforcement arrest, police officers have probable cause to arrest when they reasonably believe that "the person to be arrested has committed or is committing a crime." *Hernandez* v. *United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *Posr* v. *Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999)); *see also De Lourdes Torres* [v. *Jones*, 26 N.Y.3d 742, 759 (2016)] ("Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." (quoting *Colon* v. *City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)). On the other hand, for a mental health arrest, police officers must have "reasonable grounds for believing that the person seized is dangerous to herself or others." *Anthony* v. *City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (internal quotation marks omitted); *accord Green* v. *City of New York*, 465 F.3d 65, 83-84 (2d Cir. 2006) (requiring a showing of dangerousness for seizure and transportation to hospital for treatment or evaluation).

*Guan* v. *City of New York*, 37 F.4th 797, 804-05 (2d Cir. 2022); *see also Heller*

v. *Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015) ("[A]

showing of probable cause in the mental health seizure context requires only a

probability or substantial chance of dangerous behavior, not an actual showing

of such behavior." (quoting *Monday* v. *Oullette*, 118 F.3d 1099, 1102 (6th Cir.

1997))), *aff'd*, 665 F. App'x 49 (2d Cir. 2016) (summary order).

28

The record before the Court suggests that Plaintiff's encounter with law enforcement on July 6, 2023, may have been the product of a mental health issue rather than a criminal investigation.  (*See* Pl. PML Opp. 2 ("However, the TAC alleges that Plaintiff was forcibly removed from his home by officers without a warrant, probable cause, court order, or any victim alleging wrongdoing.  No crime or emergency justified this conduct.")).  In either case, the Court believes that Plaintiff could adequately plead a false arrest claim against the NYPD Defendants — in the form of his non-consensual removal from his residence and transport to Jacobi Hospital — and will allow him to do so.  And at this stage of the case, the Court would be limited to considering the "facts stated on the face of the complaint" and the "documents appended to the complaint or incorporated in the complaint by reference."  *Goel*, 820 F.3d at 559.  As a result, many of the factual allegations now proffered by the City Defendants in their motion papers — including their references to New York Mental Hygiene Law § 9.39 (*see* City Def. Br. 9-10) — could not be considered.  That said, Plaintiff is cautioned to be as specific as possible in describing what NYPD Defendants committed what actions toward him that, Plaintiff believes, amounted to false imprisonment.  And to the extent that Plaintiff cannot yet identify what officers did what conduct, he still needs to specify what conduct was done to him.

### c.    Plaintiff Could State a Claim for Excessive Force Against Certain of the NYPD Defendants

For similar reasons, the Court believes that Plaintiff could plead a Section 1983 claim against one or more NYPD Defendants for excessive force.

An excessive force claim arising from an investigation or arrest is evaluated under the Fourth Amendment right against unreasonable seizures. *Linton* v. *Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (citing *Tolan* v. *Cotton*, 572 U.S. 650 (2014)).  "Whether an officer has violated that right 'requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (quoting *Tolan*, 572 U.S. at 656).  Excessive force claims are evaluated under a standard of reasonableness. *Graham* v. *Connor*, 490 U.S. 386, 396-97 (1989).  That is, "a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini* v. *City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).  However, evaluation "of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Barnes* v. *Felix*, 605 U.S. 73, 76, 79-84 (2025) (rejecting "moment of threat" inquiry in excessive force analysis in favor of consideration of the totality of the circumstances).

Unsurprisingly, Plaintiff does not allege that he was in any way disruptive or violent towards the NYPD officers who responded to his residence. And yet Plaintiff alleges that the NYPD Defendants "approached Plaintiff with guns drawn."  (TAC 3).  In addition, the Jacobi Record contains Plaintiff's statement that he was "not being aggressive" when the officers arrived, but that they nonetheless "kicked him in his back and hurt his [right] wrist."  (Jacobi

30

Report).[13]  In consequence, the Court will allow Plaintiff to replead his excessive force claims against the relevant NYPD Defendants.  Plaintiff is again directed to be specific as to which NYPD Defendants committed which actions, and what injuries Plaintiff suffered as a result.  And even if he cannot tie specific conduct to a specific NYPD officer, Plaintiff does need to specify the conduct that he claims constitutes excessive force and the injuries he attributes to that conduct.

### 4. Plaintiff Has Failed to Plead a Claim Against the City of New York

Before motion practice began, Plaintiff agreed that the proper municipal entity against which his claims could be brought was the City of New York, and not the NYPD.  *See* N.Y. City Charter, ch. 17 § 396.  (Pl. PML Opp.).  "To hold a [municipality] liable under [Section] 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: [i] an official policy or custom that [ii] causes the plaintiff to be subjected to [iii] a denial of a constitutional right."  *Lucente* v. *Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray* v. *City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  "[A] municipality cannot be made liable [under Section 1983] by application of the

---

[13]    The TAC recites that the NYPD Officers used excessive force "before placing [Plaintiff] in handcuffs."  (TAC 3).  In repleading this claim, Plaintiff should specify whether he is claiming excessive force in the process of handcuffing him.  *See Cugini* v. *City of New York*, 941 F.3d 604, 612-13 (2d Cir. 2019) (noting three "evidentiary factors" that "may ... prove useful ... in assessing the soundness of a handcuffing-based excessive force claim": (i) whether "the arrestee's handcuffs were unreasonably tight," (ii) whether "the defendants ignored the arrestee's pleas that the handcuffs were too tight," and (iii) "the degree of injury to the arrestee's wrists").

31

doctrine of *respondeat superior*," *Pembaur* v. *City of Cincinnati*, 475 U.S. 469, 478 (1986), but rather the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury," *Roe* v. *City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (quoting *Bd. of Cnty. Comm'rs* v. *Brown*, 520 U.S. 397, 404 (1997)).

Under *Monell*, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick* v. *Thompson*, 563 U.S. 51, 61 (2011). In order to establish *Monell* liability based upon a "persistent and widespread" practice by a subordinate municipal employee (or employees) other than a policymaker, the employee's unconstitutional conduct must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Lucente*, 980 F.3d at 297-98 (quoting *Sorlucco* v. *N.Y.C. Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)). "[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." *Bowen* v. *Cnty. of Westchester*, 706 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (quoting *Newton* v. *City of New York*, 566 F. Supp. 2d 256, 270-71 (S.D.N.Y. 2008));

Plaintiff has not alleged any policies or widespread practices or customs related to the alleged actions of the City Defendants. Nor does the Court believe he would be able to do so with an amended pleading. Plaintiff alleges a single encounter with law enforcement, and his allegations are insufficient to allege a customary practice or existence of a particular policy. *See City of*

32

*Oklahoma City* v. *Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). Accordingly, Plaintiff's claims against the City are dismissed without leave to replead.

### 5.    The Court Will Dismiss Plaintiff's State-Law Claims

Finally, Plaintiff pleads state-law tort claims for assault, battery, false arrest, unlawful detention, and animal cruelty. (TAC; Pl. City Opp. 2). However, as the City Defendants note (City Def. Br. 16-17), Plaintiff failed to serve a timely notice of claim as required New York's General Municipal Law. As a result, the Court will dismiss these tort claims against the City Defendants without leave to replead.

Under New York General Municipal Law §§ 50-e(1)(a) and 50-i(1), "a plaintiff asserting tort claims against the City or its employees must file a notice of claim within ninety days after the incident giving rise to the claim and commence the action within a year and ninety days from the date of the incident." *Brown* v. *City of New York*, No. 18 Civ. 3287 (JPO), 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Morales* v. *City of New York*, No. 13 Civ. 7667 (RJS), 2016 WL 4718189, at *9 (S.D.N.Y. Sept. 7, 2016) ("New York's notice-of-claim requirements are 'construed strictly,' even against *pro se* plaintiffs." (citations omitted)). "Federal courts do not have jurisdiction to hear complaints from

33

plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." *Gibson* v. *Comm'r of Mental Health*, No. 04 Civ. 4350 (SAS), 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (footnote omitted). Further, "the burden is on [the p]laintiff to demonstrate compliance with the notice of claim requirements." *Peritz* v. *Nassau Cty. Bd. of Coop. Educ. Servs.*, No. 16 Civ. 5478 (DRH), 2019 WL 2410816, at *4 (E.D.N.Y. June 7, 2019) (collecting cases), *reconsideration denied*, 2019 WL 2743640 (E.D.N.Y. July 1, 2019).

Plaintiff did not plead that he filed a notice of claim, and more than 90 days have passed since the date of incident, which occurred on July 6, 2023. Accordingly, the Court must dismiss Plaintiff's state-law claims against the City Defendants, and will not grant Plaintiff leave to replead them. *See Culbreth* v. *Manuel*, No. 24 Civ. 497 (PMH), 2025 WL 35059, at *8 (S.D.N.Y. Jan. 6, 2025) (dismissing state-law claim for failure to comply with notice of claim requirement).

**CONCLUSION**

For the reasons stated in this Opinion, the Court grants the motions to dismiss filed by the City Defendants and the BronxWorks Defendants. Plaintiff's claims against the BronxWorks Defendants are dismissed with prejudice and without leave to replead. Plaintiff's claims against the City Defendants are also dismissed. Plaintiff is given leave to replead his Section 1983 false arrest and excessive force claims against the NYPD Defendants; the remaining claims against the NYPD Defendants, as well as all claims against the City of New York and DHS Officer Harvey, are dismissed with prejudice. Plaintiff's claims against Jacobi Hospital are dismissed without prejudice for failure to timely serve.

The Clerk of Court is directed to terminate the motions at docket entries 44 and 49, and to remove Jacobi Hospital, the City of New York, BronxWorks, DHS Officer Harvey, and Genesis Pena (listed in the caption as "Miss Genesis") from the caption of this case. The parties are directed to meet and confer, and to submit a proposed Case Management Plan on or before **March 2, 2026**. In addition, counsel for the City Defendants is directed to advise the Court regarding the status of Defendant Nunez-Lopez on or before **March 2, 2026**.

SO ORDERED.

Dated:  February 10, 2026
       New York, New York

                              KATHERINE POLK FAILLA
                             United States District Judge